NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0917n.06

No. 10-3696

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

FILED

**Aug 20, 2012**

LEONARD GREEN, Clerk

VENUS BLACKSHEAR,

    Plaintiff-Appellant,

v.

INTERSTATE BRANDS CORPORATION,

    Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:    MARTIN, MOORE, and COOK, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  After being fired, Venus Blackshear brought suit against her employer, Interstate Brands Corporation, alleging discrimination and retaliation based on sex and race in violation of Title VII of the Civil Rights Act of 1964 and the Ohio Revised Code § 4112; retaliation in violation of the Family and Medical Leave Act; and intentional infliction of emotional distress.  The district court granted summary judgment for Interstate Brands on all claims. Blackshear appeals the grant of summary judgment on all claims except her claim under the Family and Medical Leave Act.  For the following reasons, we **AFFIRM** the grant of summary judgment.

I.

Venus Blackshear worked as a Sanitor at the Interstate Brands bakery in Columbus, Ohio, from 2004 until her termination in March 2008.  Beginning in June 2006, and continuing throughout the rest of her employment, Blackshear complained of harassment and discriminatory treatment by

her supervisor, Rebecca Keller. Blackshear, an African-American female, alleged that Keller made sexual advances on Blackshear's domestic partner, Deidre Manning, a Caucasian female who was also employed by Interstate Brands and supervised by Keller. Manning allegedly rejected Keller's advances and told Keller that she was in a relationship with Blackshear. After discovering the relationship between Blackshear and Manning, Keller allegedly began harassing Blackshear and treating her unfairly. Blackshear responded by filing human resources complaints, union grievances, and charges with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission.

On January 24, 2008, Blackshear and Manning got into an altercation at the bakery while both were working a night shift. Bruce Rainey, a supervisory employee but not the direct supervisor of either Blackshear or Manning, witnessed the two women yelling and swearing at each other. During an arbitration hearing, Rainey testified that Blackshear approached Manning during this argument and told Manning, "I will knock you the fuck out." Manning did not physically threaten anyone during this argument. Rainey separated the two women, sent them both home after ascertaining that their direct supervisor, Keller, was not present, and reported the incident in writing and verbally to the human resources manager, Al Zarella. Zarella met with Manning, and Manning stated that she did not remember whether Blackshear had threatened her. Zarella also met with Blackshear, who denied threatening Manning and stated that Manning had been experiencing a diabetic episode and that Blackshear's conduct was an attempt to help calm Manning.

Interstate Brands has a Workplace Violence Policy, which provides in part:

> Violence, threats, harassment, intimidation, and other disruptive behavior in our workplace will not be tolerated: that is, all reports of incidents will be taken seriously and will be dealt with appropriately. Such behavior can include oral or written statement[s], gestures, or expressions that communicate a direct or indirect threat of physical harm. Individuals who commit such acts may be removed from the premises and may be subject to disciplinary action, criminal penalties, or both . . . . Any employee found in violation of this policy will be subject to immediate termination of employment.

Relying on the statements made to him by Manning, Blackshear, Rainey, other witnesses, and union representatives, Zarella concluded that Blackshear had violated Interstate Brands's Workplace Violence Policy by threatening Manning with physical harm. Zarella and Syd Wiley, the human resources director, concluded that Blackshear's conduct required discharge. Blackshear was discharged on March 13. Manning was suspended for seven days due to her conduct.

After grieving her discharge, Blackshear filed suit in state court. Interstate Brands removed to federal court. Following discovery, Interstate Brands moved for summary judgment. The district court granted summary judgment on all claims. The court found that Blackshear's sex discrimination claim was not actionable because the alleged discrimination was based on "[m]ere jealousy" and not gender. The district court also found that Blackshear's race discrimination and retaliation claims failed because Interstate Brands's decision to terminate her employment was based on a non-pretextual, non-discriminatory reason. The district court granted summary judgment on her Family and Medical Leave Act claim after finding that she had presented no evidence of a causal connection between her leave under the Act and her termination. Finally, the district court found that Blackshear's claim of intentional infliction of emotional distress failed because Interstate Brands's conduct did not constitute "extreme and outrageous conduct." Blackshear appeals the district court's

findings on her claims of sex discrimination, race discrimination, retaliation, and intentional infliction of emotional distress.

## II.

We review de novo the district court's grant of summary judgment. *Regan v. Faurecia Automotive Seating, Inc.*, ___ F.3d ___, 2012 WL 1623206, at *3 (6th Cir. 2012) (citing *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012)). Summary judgment should be granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). In deciding whether to grant a motion for summary judgment, we must draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.*

## III.

### A. Sex Discrimination

Title VII states that it is an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Ohio Revised Code applies the same standard in evaluating employment discrimination claims. *See* Ohio Rev. Code § 4112; *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 69 Ohio St. 3d 89, 92-93, 630 N.E.2d 669, 672 (Ohio 1994); *see also Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir. 2003) ("We shall consider [plaintiff's]

federal and state-law discrimination claims under the Title VII framework because Ohio's requirements are the same as under federal law.").

Blackshear has not presented evidence of discriminatory action by her employer "because of" her sex. She has presented evidence in support of an allegation that Keller treated her unfairly due to Keller's jealousy of Blackshear's relationship with Manning, but has provided no evidence of discriminatory treatment due to her gender. The district court correctly found that personal animus, such as that allegedly exhibited by Keller, cannot be the basis of a discrimination claim under federal or Ohio law. *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 343 (6th Cir. 1998) (holding that "personal conflict does not equate with discriminatory animus"). We agree that Blackshear has not presented evidence of an actionable claim of discrimination on the basis of sex.

B.     Race Discrimination

Blackshear argues that her race discrimination claim should be evaluated under the mixed-motive standard rather than the traditional single-motive standard described by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir. 2008) ("Discrimination claims brought pursuant to [Title VII] are traditionally categorized as either single-motive claims, *i.e.*, where an illegitimate reason motivated an employment decision, or mixed-motive claims, *i.e.*, where both legitimate and illegitimate reasons motivated the employer's decision."). However, Blackshear presented her claim as a single-motive claim and only raised the mixed-motive argument on appeal. Blackshear has waived this argument on appeal. *Pressman*, 384 F.3d at 186; *see also Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th

Cir. 1996) ("[I]ssues not squarely presented to the trial court are considered waived."). We therefore consider her claim under the traditional single-motive standard.

Under the *McDonnell Douglas* framework, "(1) the plaintiff must establish a prima facie case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual." *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 630 (6th Cir. 2008) (citing *Harrison v. Metro. Gov't of Nashville & Davidson Cnty.*, 80 F.3d 1107, 1115 (6th Cir. 1996)). To establish a prima facie claim of discrimination by circumstantial evidence, "a plaintiff must demonstrate (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 802).

Even assuming that Blackshear has made a prima facie claim of discrimination, Interstate Brands has presented a legitimate, nondiscriminatory reason for terminating her and Blackshear has failed to demonstrate that this reason was pretextual. The employer meets its burden of demonstrating a legitimate reason for termination by "explain[ing] what it has done or produc[ing] evidence of legitimate nondiscriminatory reasons." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (alteration omitted). Interstate Brands presented evidence that it terminated Blackshear because her conduct violated the Workplace Violence Policy; the Policy dictates that any employee found to be in violation of the Policy will be terminated. Wiley, Interstate Brands's regional human resources director, testified that, in all cases where employees were found

to be in violation of the Policy, the employees were discharged. With this explanation and evidence, Interstate Brands has met its burden of presenting a legitimate, nondiscriminatory reason for discharging Blackshear. *See, e.g.*, *id.*

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* Where a plaintiff attempts to show that the employer's proffered reasons had no basis in fact, we examine whether the employer had an honest belief in the proffered reasons. "If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009); *see also Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 558-59 (6th Cir. 2009).

Blackshear has not demonstrated pretext. First, Interstate Brands's reason for her discharge was based on the fact, as recounted by witnesses and union representatives, that Blackshear had engaged in disruptive behavior that violated the Policy. While Blackshear disputes that she made a verbal threat of direct physical violence against Manning, Interstate Brands—relying on facts the company gathered in its investigation—discharged Blackshear based on its honest belief that Blackshear had made such threats. *See Upshaw*, 576 F.3d at 586-87 (finding that a later-discovered mistake in the data upon which employer relied in taking an employment action did not demonstrate pretext where employer honestly believed, based on facts before it at the time, that the data supported

its action). Viewing the facts in the light most favorable to Blackshear's account of the incident, there is no genuine issue of material fact as to Interstate Brands's honest belief that Blackshear made "statement[s], gestures, or expressions that communicate[d] a direct or indirect threat of physical harm" in violation of the company's Policy. Second, Blackshear has not presented any evidence demonstrating that her violation of the Policy did not actually motivate Interstate Brands's decision to discharge her. She concedes in her brief that her alleged violation of the Policy is at least one of the reasons upon which Interstate Brands based its decision to terminate her. Lastly, Blackshear has not demonstrated that her violation of the Policy was insufficient to motivate her termination. *See, e.g.*, *Sybrandt*, 560 F.3d at 560-61 (finding that plaintiff failed to demonstrate that employer's reason for termination was insufficient where employer discharged plaintiff because she violated a company policy). The Policy explicitly states that the company will "immediate[ly] terminat[e]" any employee who makes threats of physical harm, and Wiley testified that Interstate Brands did indeed terminate any employee found to be in violation of the Policy.

Blackshear has not provided sufficient evidence to prove pretext, even if we were to find that she has established a prima facie case of race discrimination. We affirm the district court's grant of summary judgment for Interstate Brands on this claim.

C.      Retaliation

Blackshear alleges that Interstate Brands fired her in retaliation for filing complaints of race and sex discrimination. Blackshear's retaliation claims fail for similar reasons as her other Title VII and state-law discrimination claims. Title VII retaliatory discharge claims based on circumstantial evidence follow the *McDonnell Douglas* framework, which requires the demonstration of a prima

facie case, a legitimate and non-discriminatory reason for the adverse employment action, and pretext. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 502 (6th Cir. 2009). This framework also applies to retaliation claims under Ohio Revised Code § 4112. *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007). To make out a prima facie case of retaliatory discharge, a plaintiff must show that "(1) she engaged in Title-VII protected activity; (2) [her employer] knew that she engaged in the protected activity; (3) [her employer] subsequently took an adverse employment action against [her]; and (4) the adverse employment action was causally related to the protected activity." *Ladd*, 552 F.3d at 502. Even assuming that Blackshear has made out a prima facie case of retaliation, she again has not shown that Interstate Brands's non-discriminatory reason for firing her—her violation of the Workplace Violence Policy—was pretextual.

D.      Intentional Infliction of Emotional Distress

Finally, Blackshear appeals the district court's grant of summary judgment on her state law claim of intentional infliction of emotional distress by Interstate Brands. Under Ohio law, such a claim exists where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Anderson v. Eyman*, 907 N.E.2d 730, 741 (Ohio Ct. App. 2009) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 374, 453 N.E.2d 666, 671 (Ohio 1983) (alteration in original) (internal quotation marks omitted), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St. 3d 464, 866 N.E.2d 1051 (Ohio 2007)). To state such a claim under Ohio law, the "plaintiff must allege that (1) defendants intended to cause emotional distress, or knew or should have known that their actions would result in plaintiff's serious emotional distress, (2) defendants' conduct was extreme and

outrageous, (3) defendants' actions proximately caused plaintiff's emotional injury, and (4) plaintiff

suffered serious emotional anguish." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (citing

*Hanly v. Riverside Methodist Hosps.*, 78 Ohio App. 3d 73, 82, 603 N.E.2d 1126, 1132 (Ohio Ct.

App. 1991)).

Blackshear argues that Interstate Brands's conduct—including both its decision to terminate

her and Keller's alleged continuous harassment of Blackshear—was extreme and outrageous. In

addition to the company's decision to fire her in March 2008, Blackshear argues that Keller gave her

a larger workload than other employees, verbally harassed her, and unjustifiably reported her poor

conduct to management. In her deposition testimony, Blackshear explained that Keller had

attempted to make her life miserable by doing "[e]verything she could get away with, from my

worksheet to writing me up to trying to get me fired off the job, anything she could do to—to take

me to the edge, she—she did it." Blackshear claims that she suffered migraine headaches and mental

anguish as a result of this conduct by Keller.

For an actor's conduct to rise to an actionable level, it must be "so extreme and outrageous

as to go 'beyond all possible bounds of decency' and . . . be considered as 'utterly intolerable in a

civilized community.'" *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (Ohio Ct. App.

1983) (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Viewing the evidence in the

light most favorable to Blackshear, neither Interstate Brands's decision to terminate Blackshear nor

Keller's alleged conduct was "beyond all possible bounds of decency." An employer's decision to

discharge an employee because it believes the employee violated a workplace policy is not extreme

and outrageous. *See Foster v. McDevitt*, 31 Ohio App. 3d 237, 239, 511 N.E.2d 403, 406 (Ohio Ct.

App. 1986) (finding that an employer is entitled to act upon its legal rights, including its right to terminate an employee, regardless of whether it knew or intended that the act would add to employee's emotional distress). A decision to terminate an employee, regardless of whether the decision was discriminatory, is not sufficient to sustain a claim of intentional infliction of emotional distress. *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) ("[A]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more."). Further, Keller's alleged conduct—including her reporting of Blackshear's poor conduct to management, close inspection of Blackshear's work, and negative comments toward Blackshear—do not constitute behavior "beyond all possible bounds of decency" that an average person would find to be outrageous. *See Yeager*, 6 Ohio St. 3d at 375, 453 N.E.2d at 671 ("[L]iability [for intentional infliction of emotional distress] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (citation and internal quotation marks omitted). For these reasons, we agree with the district court that no reasonable juror could find that Interstate Brands's conduct constitutes the "extreme and outrageous" behavior necessary to support a claim of intentional infliction of emotional distress under Ohio law.

IV.

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.